RANDALL MOTZER *v.* EDWARD HABERLI ET AL.
(SC 18649)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

---

Argued January 10—officially released April 26, 2011

*Bruce A. Chaplin*, for the appellant (plaintiff).

*Tracey Lane Russo*, with whom, on the brief, was *Joseph N. DeFilippo*, for the appellees (defendants).

*Opinion*

ZARELLA, J. The plaintiff, Randall Motzer, appeals[1] from the judgment of the trial court rendered in favor of

---

[1] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the defendants, Edward Haberli and E. Haberli Electric, LLC, following the trial court's decision to grant the defendants' motion for a directed verdict. In granting the motion, the trial court concluded, inter alia, that the plaintiff's claims were barred by the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., and that the plaintiff had failed to establish that his employer committed an intentional tort that caused the plaintiff's injury. See, e.g., *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 106, 639 A.2d 507 (1994) (recognizing exception to exclusivity of workers' compensation remedy when plaintiff's injury results from employer's intentional tort). On appeal, the plaintiff claims that the trial court improperly (1) precluded the testimony of one of his expert witnesses, (2) excluded certain documents from evidence, (3) granted the defendants' motion for a directed verdict, and (4) denied the plaintiff's request to amend his complaint. We affirm the judgment of the trial court.

The record reveals the following undisputed facts. In June, 2004, the plaintiff graduated from a technical high school where he had received training for "electrical residential wiring." Shortly after graduation, the plaintiff began full-time work for the defendants as an apprentice in pursuit of his electrician's license.[2] On June 22, 2004, the plaintiff was working on a job site for the defendants, helping to install electrical wiring through the ground floor of a unit in an apartment complex. This task required at least two people. Another apprentice, Bryan Papillo, worked on the first floor while the plaintiff worked in the basement. Papillo drilled holes in the floor and fed wires down to the plaintiff for him to secure in preparation for the installa-

---

[2] To obtain a license as an electrician, an apprentice must attain 8000 hours of experience. The training and experience that the plaintiff received from his technical high school education equated to 2000 hours of experience.

tion of the wires into an electrical panel. In one instance, the plaintiff looked into a hole that Papillo had just drilled to spot a wire and noticed that there were several woodchips in the hole. The plaintiff put his fingers in the hole to clean out the debris and to search for the wire. According to the plaintiff's testimony, while he was clearing the debris from the hole with his fingers, the plaintiff heard Papillo "yell something" just as a "drill bit immediately came down and drilled [the plaintiff's] finger," resulting in the amputation of the tip of the index finger on his left hand. As a result of this injury, the plaintiff received workers' compensation benefits.

Notwithstanding his receipt of workers' compensation benefits, the plaintiff filed a two count complaint against the defendants on June 27, 2006, which subsequently was amended on January 16, 2008.[3] In count one of the amended complaint, the plaintiff alleged, inter alia, that the defendants engaged in "serious and willful misconduct . . . with the knowledge or belief that serious injury to [their] employees, including the [plaintiff], [was] substantially certain to occur as a result" and that the defendants' misconduct caused the plaintiff's injury. The claimed misconduct by the defendants included (1) failure to supervise the plaintiff properly, (2) failure to warn the plaintiff of dangers associated with the use of power equipment, (3) failure to inspect the job site and to make it safe for employees, and (4) violation of applicable state and federal safety regulations. In count two, the plaintiff alleged that the

---

[3] The plaintiff filed a second amended complaint in March, 2009, approximately ten days before the commencement of trial, primarily for the purpose of correcting typographical errors. In the interest of simplicity, we hereinafter refer to the plaintiff's operative complaint as the amended complaint. Although the plaintiff sought to file a third amended complaint on the day that trial commenced, the trial court rejected the plaintiff's request to do so. The propriety of the court's decision to reject that request is one of the issues presented by this appeal.

defendants' violations of applicable safety regulations constituted an "unfair or deceptive trade practice" within the meaning of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b.

The defendants, in their answer, denied responsibility for the plaintiff's injury and filed five special defenses, including that the plaintiff's claims were barred by the exclusivity provision of the act because the defendants "[were the] [p]laintiff's principal employer and/or paid workers' compensation benefits to [the] [p]laintiff." The plaintiff filed a reply, denying the allegations of the special defenses. A jury trial on the matter began in March, 2009. At the close of the plaintiff's case, the defendants filed a motion for a directed verdict on the grounds that the plaintiff had failed to prove that the safety violations caused the plaintiff's injury and that the plaintiff had failed to present sufficient evidence for a jury to conclude either that the defendants intentionally caused the plaintiff's injury or that the defendants knew that the plaintiff's injury was substantially certain to occur as a result of their conduct, as required by this court's decision in *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 106–109. The plaintiff objected to the motion, and, following written and oral arguments, the trial court granted the defendants' motion for a directed verdict and rendered judgment for the defendants.[4] This appeal by the plaintiff followed.

On appeal, the plaintiff first claims that the trial court improperly precluded certain expert testimony on the

---

[4] Although the trial court did not mention, in its decision to grant the defendants' motion for a directed verdict and the judgment, the second count of the plaintiff's complaint, that is, the unfair trade practice claim, we treat this count as having been implicitly disposed of by the trial court. because it was predicated entirely on the allegations of the first count. See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 488 n.1, 646 A.2d 1289 (1994) (concluding that implicit disposal of claim constituted final judgment). The plaintiff does not claim on appeal that the trial court improperly disposed of the second count.

issue of causation and improperly excluded certain documents from evidence. The plaintiff next claims that the trial court improperly granted the defendants' motion for a directed verdict because, even without the improperly excluded testimony and evidence, the plaintiff had presented sufficient evidence on which the jury reasonably could have relied in finding in favor of the plaintiff. Finally, the plaintiff claims that the trial court abused its discretion in denying the plaintiff's request to file a third amended complaint. We address each claim in turn.

We begin with the plaintiff's claims regarding the trial court's evidentiary rulings. The plaintiff first claims that the trial court improperly precluded the testimony of his expert, Jack M. Guerrera, on the issue of causation. We disagree.

The following additional facts are relevant to our resolution of this issue. At trial, the plaintiff's counsel offered the testimony of Guerrera, who at all relevant times was employed by the state department of labor as the apprenticeship program manager, as an expert witness to establish that the defendants' violation of certain labor regulations and standards caused the plaintiff's injury.[5] The trial court initially precluded Guerrera from testifying because he had not investigated or witnessed the event that resulted in the plaintiff's injury and therefore was not qualified to render an expert opinion.[6] The plaintiff's counsel attempted to

[5] The violations that the plaintiff alleged include the defendants' failure to register the plaintiff with the state department of labor as an apprentice and their failure to have the proper ratio of apprentices and supervising journeymen on the job site.

[6] We note that this basis for the trial court's ruling was improper because expert witnesses are permitted to testify in response to a hypothetical question based on the facts of the case even if the expert does not have firsthand knowledge of those facts. See Conn. Code Evid. § 7-4 (c); see also *Viera* v. *Cohen*, 283 Conn. 412, 444, 927 A.2d 843 (2007). As we discuss more fully in this opinion, the trial court also excluded Guerrera's opinion on a second basis. Because we conclude that the trial court properly precluded

offer Guerrera's testimony on the issue of causation a second time and made an offer of proof from Guerrera's deposition testimony to establish the basis for Guerrera's expert opinion. The plaintiff's counsel read to the court the portion of the deposition testimony in which the plaintiff's counsel asked Guerrera whether the plaintiff's injury was a "foreseeable" or "likely" result of the defendants' workplace safety violations, in response to which Guerrera answered: " 'I don't know. I mean, I don't really know. Is it likely to happen . . . ? [T]he only way that I could answer that is that if individuals were doing electrical work [and] they were not properly supervised; chances are an accident is going to happen because it is an unsafe work situation. That's more than a yes or no, but I don't know. I can't answer it with a yes or no.' " The court again precluded Guerrera from testifying as to his opinion on causation, ruling that it was "not convinced that [Guerrera] is qualified to render an opinion about what happened here. Even if he is, his answer is, 'I don't know, I really don't know' . . . and then he thinks out loud." The court concluded that the offer of proof did not provide "enough of a foundation for [Guerrera] to offer [an expert] opinion."

Notwithstanding the court's ruling, the plaintiff's counsel continued to press the court to permit Guerrera's testimony as to causation and gave a second offer of proof from Guerrera's deposition testimony. According to the second proffer, Guerrera testified at his deposition that, although nothing different would have occurred in this case if the plaintiff had been properly supervised by a journeyman electrician, as

Guerrera's testimony on the second basis, the error in the initial ruling was harmless. See *Kalams* v. *Giacchetto*, 268 Conn. 244, 249–50, 842 A.2d 1100 (2004) ("[i]n the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless" [internal quotation marks omitted]).

required by the applicable regulations, "chances are, without proper journeyperson supervision, an accident is bound to happen . . . .." The trial court again precluded Guerrera from testifying as an expert on the ground that the plaintiff's counsel had not offered a sufficient foundation "that would permit an opinion from [Guerrera] based on what happened at [the work] site that day."

We begin our analysis with the standard of review. "We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 10–11, 1 A.3d 76 (2010).

We conclude that the trial court did not abuse its discretion in precluding Guerrera's expert opinion as to whether the defendants' violation of safety regulations caused the plaintiff's injury. It is well established that "[e]xpert opinions must be based [on] reasonable probabilities rather than mere speculation or conjecture if they are to be admissible in establishing causation. . . . Whether an expert's testimony is expressed in terms of a reasonable probability . . . does not depend [on] the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 592, 986 A.2d 1023 (2010); see also *State* v. *Colon*, 272 Conn. 106, 214, 864 A.2d 666 (2004) (upholding exclusion of expert opinion when "[expert's] answer would have been nothing more than speculation in that there was no foundation laid for the basis of his answer"), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *Schwartz* v. *Westport,*

170 Conn. 223, 225, 365 A.2d 1151 (1976) (upholding trial court's exclusion of expert opinion in response to hypothetical because response would have been too speculative). The offers of proof did nothing more than to establish that Guerrera's opinion as to causation was that he did not know whether the plaintiff's injury was a "foreseeable" or "likely" result of the defendants' safety violations and that, at best, he could say only that "chances are" that an accident was bound to happen. The plaintiff's counsel did not provide any additional offers of proof to demonstrate that Guerrera's opinion, to the extent that he had one, was based on anything more than mere speculation. On the basis of the record, we conclude that the trial court did not abuse its discretion in excluding Guerrera's expert testimony as to causation.

The plaintiff next claims that the trial court abused its discretion in excluding certain documents and testimony from evidence because exclusion of this evidence improperly hindered the plaintiff's ability to present his case in a manner of his choosing. The defendants respond that the trial court properly excluded the evidence because it was cumulative of other evidence. We agree with the defendants.

At trial, the plaintiff's counsel offered numerous documents pertaining to the safety rules and regulations applicable to the electrician apprentice program and sought to have Guerrera testify in a nonexpert capacity as to the substance and import of the documents. The plaintiff offered the documents and testimony to prove the existence and substance of the safety regulations, that the defendants had agreed to abide by the regulations and that the defendants had violated the regulations. The defendants offered to stipulate to each of these facts and objected to admission of the evidence as cumulative. The trial court excluded the evidence on the ground that the facts that the plaintiff sought to

prove with this proffered evidence already were established by prior testimony and unnecessary in light of the defendants' willingness to stipulate.

We conclude that the trial court did not abuse its discretion in excluding the proffered evidence. Our rules of evidence vest trial courts with discretion to exclude relevant evidence when "its probative value is outweighed . . . by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Conn. Code Evid. § 4-3; see also *State* v. *Parris*, 219 Conn. 283, 293, 592 A.2d 943 (1991) (trial court has discretion to exclude evidence as cumulative when it does not present new information). In the present case, the evidence in question, which the plaintiff's counsel offered to prove that the defendants were bound by and violated certain safety regulations, was cumulative of other testimony already presented by the plaintiff's counsel and also by virtue of the defendants' willingness to stipulate to these facts. C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 4.9.2, p. 145 ("[w]hen a party is willing to concede or stipulate to a fact, i.e., to make a judicial admission, that fact is no longer in issue . . . [and] [f]urther proof would be cumulative as well as cause undue delay and waste time" [internal quotation marks omitted]). But cf. *State* v. *Doehrer*, 200 Conn. 642, 649–51, 513 A.2d 58 (1986) (upholding long-standing case law permitting prosecution to present photographic evidence in murder trial notwithstanding defendant's offer to stipulate because of state's high burden in criminal cases). The plaintiff has not shown that the excluded evidence offered anything beyond what already had been admitted or what the defendants were willing to admit. Therefore, the trial court did not abuse its discretion in excluding the proffered evidence.[7]

---

[7] The plaintiff also claims that the trial court abused its discretion in excluding the proffered evidence because the evidence was relevant to the issue of causation. We disagree. Even if we assume, without deciding, that

The plaintiff next claims that the trial court improperly granted the defendants' motion for a directed verdict on the ground that the plaintiff's claims were barred by the exclusivity provision of the act because he had failed to establish a prima facie case for an intentional tort by his employer.

We begin with the standard of review of a trial court's decision to grant a motion for a directed verdict. "Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 163, 914 A.2d 529 (2007).

We conclude that the trial court properly directed a verdict in favor of the defendants. Employees who are injured during the course of employment have a right to compensation exclusively through the workers' compensation system; General Statutes § 31-284 (a); and are generally barred from bringing common-law actions against employers for their injuries. *Suarez* v. *Dickmont Plastics Corp.*, supra, 229 Conn. 106. We have recognized a narrow exception to this general rule "when a plaintiff can establish an intentional tort claim by

the proffered evidence was relevant to the issue of causation, a trial court has the discretion to exclude cumulative evidence even though the evidence may be relevant to one or more issues at trial. See Conn. Code Evid. § 4-3.

demonstrating that his employer either: (1) actually intended to injure [the employee][8] . . . or (2) intentionally created a dangerous condition that made [the employee's] injuries substantially certain to occur . . . ." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 118, 889 A.2d 810 (2006). The "substantial certainty" standard "requires that the plaintiff establish that the employer intentionally acted in such a way that the resulting injury to the employee was substantially certain to result from the employer's conduct. . . . To satisfy the substantial certainty standard, a plaintiff must show more than that [his employer] exhibited a lackadaisical or even cavalier attitude toward worker safety . . . . Rather, a plaintiff must demonstrate that his employer *believed* that its conduct was substantially certain to cause the employee harm." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.

The plaintiff failed to present sufficient evidence at trial to satisfy the substantial certainty standard. According to the plaintiff, the evidence at trial established that the defendants (1) intentionally violated apprenticeship standards requiring a one-to-one ratio between an apprentice and a supervising journeyman, (2) failed to register the plaintiff as an apprentice as required by safety regulations, and (3) failed to train the plaintiff properly in the use of power tools.[9] The

---

[8] Although the plaintiff alleged in his amended complaint that the defendants actually intended to harm him, on appeal, he makes no claim that the trial court improperly directed a verdict for the defendants as to that theory of liability.

[9] In addition to these facts, the plaintiff asks this court to recognize, as a matter of law, that the substantial certainty standard is satisfied when an employer places an eighteen year old individual into a working environment without proper training and in violation of safety regulations. In support of this argument, the plaintiff cites numerous cases and articles relating to the diminished capacity and life experience of minors. The plaintiff's argument is unpersuasive and his authorities are irrelevant because the plaintiff was not a minor at the time of his injury; he was eighteen years of age and,

plaintiff claims that, on the basis of these facts, the jury reasonably could have found that the defendants believed that the plaintiff's injury was substantially certain to occur. This court has established, however, that the failure to comply with safety regulations and the failure to train employees properly are insufficient to satisfy the substantial certainty standard without further evidence that the employer knew or believed that injury to the employee was substantially certain to occur. See, e.g., id., 119 ("allegations of state and federal safety violations, inadequate communication procedures, and deficient safety training" were insufficient to satisfy substantial certainty standard); *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 234, 819 A.2d 287 (2003) (violation of safety rules and regulations did not necessarily mean that "the defendant believed that its conduct was substantially certain to cause [injury to employees]"); *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 100, 491 A.2d 368 (1985) (employer's violation of safety standards was insufficient to establish intentional tort for purposes of bypassing exclusive remedy of workers' compensation). Appellate Court cases applying these principles further demonstrate the insufficiency of the plaintiff's evidence. *Martinez* v. *Southington Metal Fabricating Co.*, 101 Conn. App. 796, 804–807, 924 A.2d 150 (violation of safety regulations, failure to take safety precautions and failure to train employees were insufficient to satisfy substantial certainty standard), cert. denied, 284 Conn. 930, 934 A.2d 246 (2007); *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 456–58,

therefore, presumed under the law to be an adult. See General Statutes § 1-1d. The plaintiff has cited no authority demonstrating that eighteen year old individuals should receive heightened protection simply on the basis of their age. Because the plaintiff has not provided any analysis based on legal authority relevant to the facts of this case, we decline to consider this argument. See *Smith* v. *Andrews*, 289 Conn. 61, 80, 959 A.2d 597 (2008) (declining to review claim despite several pages of discussion when party did not provide any citations to relevant authority).

830 A.2d 372 (failure to train, to inform employee of safety risks and to provide employee with adequate protective gear was insufficient to satisfy substantial certainty standard), cert. denied, 266 Conn. 925, 835 A.2d 473 (2003); *Melanson* v. *West Hartford*, 61 Conn. App. 683, 688–90, 767 A.2d 764 (employer's failure to train employees insufficient to establish claim under substantial certainty standard), cert. denied, 256 Conn. 904, 772 A.2d 595 (2001).

The plaintiff in the present case did not present any evidence, other than that previously described, to establish that the defendants intended to injure the plaintiff or that the defendants knew or believed that the plaintiff's injury was substantially certain to occur as a result of their conduct.[10] The evidence that the plaintiff presented regarding the defendants' conduct, even if it established that such conduct was negligent or reckless, is insufficient to prove an intentional tort under *Suarez*. See, e.g., *Sorban* v. *Sterling Engineering Corp.*, supra, 79 Conn. App. 457. On the basis of the record, we con-

---

[10] Prior to granting the defendants' motion for a directed verdict, the trial court asked the plaintiff's counsel: "Do you have any other arguments that you can present or you are willing to present to show evidence in this case [other than the evidence discussed previously] of either actual intent . . . [or of the fact that] the defendant[s] . . . intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur? Do you have any other evidence that you can point . . . to other than what you've just indicated to show evidence . . . of those particular acts?" The plaintiff's counsel responded, "As I stand here, Your Honor, I can't. . . . [A]s I stand here I don't have any other specific fact other than the admitted regulatory violations . . . ." The court then asked: "Can you show me any evidence in this trial offered by any of the witnesses that you called that would establish . . . that any alleged violations of either statutes or regulations were done . . . with actual intent . . . to injure your client, or [that] intentionally created a dangerous condition that would make the injuries substantially certain to occur . . . to bring us within an exception to the exclusivity of the workers' compensation statute?" The plaintiff's counsel replied: "Without reviewing the transcript, Your Honor, I can't think of any." Thereafter, the trial court granted the defendants' motion for a directed verdict.

clude that the trial court properly granted the defendants' motion for a directed verdict.

The plaintiff's final claim on appeal is that the trial court abused its discretion in denying the plaintiff's request to file a third amended complaint on the ground that it alleged a new theory of liability after the commencement of trial. The defendants respond that the trial court properly exercised its discretion in denying the plaintiff's request. We agree with the defendants.

We review a trial court's decision to deny a request to amend a complaint for an abuse of discretion. See, e.g., *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 255, 905 A.2d 1165 (2006). The plaintiff asked the court for permission to file a third amended complaint on March 17, 2009, which was the first day of testimony in the trial. Because the plaintiff made the request after the start of the trial, we conclude that the trial court acted well within its discretion in denying the plaintiff's request. See *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 691, 974 A.2d 764 ("[this court has] never found an abuse of discretion in denying an amendment on the eve of trial, long after the conclusion of pretrial proceedings" [internal quotation marks omitted]), cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

The judgment is affirmed.

In this opinion the other justices concurred.