******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ALAIN LECONTE
(SC 19258)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Argued November 9, 2015—officially released February 23, 2016*

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, *James Bernardi*, supervisory assistant state's attorney, and *David I. Cohen*, former state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Alain Leconte, appeals from the judgments of the trial court convicting him of crimes committed during a string of armed robberies in the cities of Stamford and Norwalk, and the town of Greenwich, between October and December, 2009.[1] The defendant claims that his convictions resulting from the Stamford robbery should be reversed on the ground that his constitutional right to counsel was violated when the trial court admitted incriminating statements he made to an informant regarding the Norwalk and Greenwich robberies while he was incarcerated and represented by counsel. The defendant also claims that his convictions resulting from the Norwalk and Greenwich robberies should be reversed on the ground that the trial court violated his sixth amendment right to confrontation or, in the alternative, abused its discretion by restricting defense counsel's cross-examination of a key prosecution witness. The state responds that the trial court's admission of the incriminating statements and its restrictions on counsel's cross-examination of the witness did not violate the defendant's sixth amendment rights or constitute an abuse of the trial court's discretion and that, even if they did, any error was harmless. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Between October and December, 2009, the defendant participated in three armed robberies, each of which resulted in criminal charges against him.

The first robbery took place on October 10, 2009. The defendant, together with an accomplice, entered a Shell gas station and convenience store in Norwalk and demanded that the store clerk hand over the money in the cash register, which contained approximately $1300. He then shot the clerk in the head before fleeing with his accomplice. The clerk later died from the gunshot wound.

The second robbery took place on November 21, 2009. The defendant and three accomplices drove to a Mobil gas station in Greenwich. While two of the accomplices waited in the car and the third, Teran Nelson, stood outside as a lookout, the defendant entered the convenience store and ordered the clerk at gunpoint to give him the money in the cash registers. After the clerk handed over approximately $638 and several boxes of cigarettes, the defendant shot him in the head and drove off with Nelson. The clerk ultimately recovered from the gunshot wound.

The third robbery occurred on December 12, 2009. The defendant called and asked a friend, who also was a police informant, to give him a ride in her car. During the ride, the defendant told her to stop at a certain

location, where he picked up a gun, smoked marijuana, and met an accomplice, David Hackney, with whom he decided to commit a robbery. The informant then drove the defendant and Hackney to a Walgreens store in Greenwich. While the two men waited in the car, the informant purchased a pair of stockings that the defendant said he wanted for his mother and contacted the police by cell phone to warn of a possible robbery in Stamford. When the informant returned to the car, she drove the defendant and Hackney back to Stamford and dropped them off on Vista Street. The men then walked a short distance to Adams Grocery Store. After the defendant and Hackney pulled the stockings over their heads, they entered the store and the defendant ordered everyone at gunpoint to get down on the floor. When the defendant encountered difficulty trying to open the cash register, the store clerk offered to help. The defendant then grabbed approximately $203 in cash and fled from the store with Hackney. A short time later, the police caught the defendant as he was running down the street.

The defendant was detained and arrested, and various individuals who had been in Adams Grocery Store during the robbery identified the defendant and Hackney as the men who had just robbed the store. Police officers who had observed the men in immediate flight also identified the defendant, who was wearing the same clothing he had worn during the robbery. The defendant then was brought to the police station, where he provided a written statement in which he confessed to his involvement in the Stamford robbery and provided details regarding the incident. The defendant subsequently was charged with two counts of robbery in the first degree in connection with this robbery.

During the defendant's incarceration for the Stamford robbery, he told Anthony Simmons, a cellmate who had agreed to be a cooperating witness for the state, that he had been involved in the Norwalk and Greenwich robberies. On the basis of this information and the evidence obtained from several other persons who also were cooperating witnesses, the defendant was charged with murder, felony murder and robbery in the first degree for his participation in the Norwalk robbery and with attempt to commit murder and robbery in the first degree for his participation in the Greenwich robbery.

The three cases were joined for trial on August 21, 2012, and a jury found the defendant guilty as charged, except with respect to the two first degree robbery charges in the case involving the Stamford robbery. With respect to those charges, the jury found the defendant guilty of two counts of the lesser included offense of robbery in the second degree because evidence had been admitted that the gun he had used in the Stamford robbery was inoperable. On February 13, 2013, the court rendered judgments of conviction and imposed a total

effective sentence of ninety years incarceration.

The defendant first claims that he was deprived of his sixth amendment right to counsel[2] when the trial court admitted the incriminating statements he made to Simmons regarding his participation in the Norwalk and Greenwich robberies at a time when he was represented by counsel in the case involving the Stamford robbery. The defendant acknowledges that, because the statements concerned offenses for which he was not yet represented by counsel, they were admissible with respect to the charges stemming from the Norwalk and Greenwich robberies at the time of his trial on those charges. He claims, however, that, because the trial court granted the state's motion for joinder and tried the charges in all three cases in a single proceeding, the incriminating statements could have invited the jury to infer that, if the defendant had committed the Norwalk and Greenwich robberies, he was likely to have committed the Stamford robbery. The defendant further claims that the trial court's error was not harmless beyond a reasonable doubt.

The state responds that the admission at trial of the defendant's incriminating statements to Simmons was not improper because the Norwalk and Greenwich robberies were separate offenses from the Stamford robbery and the defendant's right to counsel, which is offense specific, had not yet attached to the Norwalk and Greenwich robbery charges when he mentioned his involvement in those robberies to Simmons. See, e.g., *Texas* v. *Cobb*, 532 U.S. 162, 167, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001) (sixth amendment right to counsel is " 'offense specific,' " meaning it does not attach until prosecution has commenced). The state adds that, to the extent the admission of this evidence was improper, it constituted harmless error. We agree with the state that the evidence of the defendant's guilt, even without the testimony of Simmons regarding the Norwalk and Greenwich robberies, is so overwhelming and compelling that any error, even if it did exist, was harmless beyond a reasonable doubt.

With respect to harmless error analysis, we have observed that, "[i]f the claim is of constitutional magnitude, the state has the burden of proving the constitutional error was harmless beyond a reasonable doubt. . . . Whether a constitutional violation is harmless in a particular case depends upon the totality of the evidence presented at trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony

of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . In order to assess the harmfulness of the impropriety, we review the record to determine whether there is a reasonable possibility that the evidence . . . complained of might have contributed to the conviction . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Santos*, 318 Conn. 412, 425, 121 A.3d 697 (2015). We apply a de novo standard of review to the defendant's sixth amendment claim.

Applying this standard in the present case, we conclude that any presumed error was harmless beyond a reasonable doubt. The defendant notes in his brief that "the identity of the perpetrator(s) in each incident, including the Stamford robbery, was the principal issue in this case." The defendant also concedes that a confession "is probably the most probative and damaging evidence that can be admitted against [a defendant] . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Artis*, 314 Conn. 131, 154, 101 A.3d 915 (2014). Thus, it is extremely probative in this case that the defendant voluntarily gave a detailed statement to the police one day after the Stamford robbery confessing to his role in that incident and that another fellow inmate, Cheikh Seye, testified that the defendant had told him in July, 2010, that he had committed the Stamford robbery. Four eyewitnesses also gave testimony regarding the Stamford robbery that corroborated the defendant's description of events inside the store, and two of the eyewitnesses who had chased him down the street following the robbery not only corroborated the defendant's account of many of his actions after running out of the store but saw him apprehended by the police when he was still wearing the stocking to conceal his face. Accordingly, we conclude that the defendant's convictions resulting from his participation in the Stamford robbery should not be reversed because any presumed error by the trial court in admitting the incriminating statements was harmless beyond a reasonable doubt.[3]

## II

The defendant next claims that the trial court violated his sixth amendment right to confrontation,[4] or, in the alternative, abused its discretion when it restricted defense counsel's cross-examination of Teran Nelson, one of the defendant's coconspirators in the Greenwich robbery, who testified regarding the defendant's participation in the Norwalk and Greenwich robberies. The state responds that the defendant's sixth amendment right to confrontation was not violated and that the trial court did not abuse its discretion because the trial court's rulings did not prevent the defense from

embarking on a far ranging cross-examination of Nelson that exposed all of the information the defendant sought to enter into evidence and adequately addressed Nelson's credibility. We agree with the state.

The following additional facts are relevant to our resolution of this claim. At trial, Nelson repeatedly acknowledged on direct examination that he had entered into a cooperation agreement with the state in exchange for his promise to testify truthfully at trial and for immunity from several pending charges that could subject him to significant prison time. Nelson then testified regarding his involvement in the Greenwich robbery and how the defendant had entered the store and robbed and shot the clerk. He also testified that, in the aftermath of the Greenwich robbery, the defendant implied that he had committed the robbery and murder in Norwalk. Nelson admitted, however, that he had lied to the police during an interview in the summer of 2010, when he denied being involved in the Greenwich robbery, and during an interview in September, 2010, when he again denied participating in that robbery but stated that he had driven the defendant to Bridgeport following its commission. Nelson ended by testifying that, in December, 2010, upon learning that the defendant had spoken to the police regarding the robberies, he finally told the truth, confessed to participating in the Greenwich robbery and entered into a cooperation agreement with the state.

On cross-examination, defense counsel repeatedly queried Nelson about his obligation to tell the truth under the cooperation agreement, his repeated lies to the police before December, 2010, concerning the Greenwich robbery, the multiple attempts by the Greenwich police to persuade him to tell the truth, his reasons for entering into the cooperation agreement with the state and, finally, the substance of the cooperation agreement, including the elimination of prison time for various pending charges in exchange for his truthful disclosure of any and all information he might possess in connection with the Norwalk and Greenwich robberies. Defense counsel also questioned Nelson regarding certain details relating to the police interrogations, including being "threatened" on several occasions to tell the truth or "they would make this about you," because the police already had evidence from other sources regarding the robberies and would know if Nelson was lying. In connection with this point, Nelson testified that Detective Pasquale Iorfino had told him during the summer interview about certain details relating to the case that he wanted Nelson to confirm so he "would get a free walk," even though Nelson resisted and did not tell the truth until December, 2010. In addition, defense counsel elicited testimony from Nelson that, if he did not testify truthfully at trial, he would risk losing the benefits provided under the cooperation agreement.

On redirect examination, Nelson again testified that he had lied to the police until he learned in December, 2010, that they had obtained information concerning the Greenwich robbery from other sources and "had everything on tape . . . ." Nelson also explained that he had heard parts of an audio recording in which Detective Iorfino was talking about the crime and that he had been told that the police also had an audio recording of the defendant talking about the crime, at which point Nelson decided to tell the truth in order to "[s]ave [him]self."

Turning to the governing legal principles and the standard of review, we note that "[t]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . .

"However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . . [Furthermore, the] trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . [Finally, the] proffering party bears the burden of establishing the relevance of the offered testimony. . . .

"Although [t]he general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial [court] . . . this discretion comes into play only after the defendant has been per-

mitted cross-examination sufficient to satisfy the sixth amendment. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Indeed, if testimony of a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to reveal any infirmities that cast doubt on the reliability of that testimony. . . . The defendant's right to cross-examine a witness, however, is not absolute. . . . Therefore, a claim that the trial court unduly restricted cross-examination generally involves a two-pronged analysis: whether the aforementioned constitutional standard has been met, and, if so, whether the court nonetheless abused its discretion . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Brown*, 273 Conn. 330, 338–40, 869 A.2d 1224 (2005).

Mindful of these principles, we first consider whether the restrictions that the trial court placed on defense counsel's cross-examination of Nelson complied with the minimum constitutional standards required by the sixth amendment. "The defendant's constitutional right to cross-examination is satisfied [w]hen defense counsel is permitted to expose to the jury the facts from which it appropriately can draw inferences relating to the reliability of the witness . . . . [W]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citation omitted; internal quotation marks omitted.) Id., 340. After reviewing the record, we conclude that the defendant was not deprived of a meaningful opportunity to cross-examine Nelson because Nelson testified extensively regarding the circumstances leading up to and surrounding his cooperation agreement with the state, including his repeated lies to the police. The defense thus was "permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) Id.

The defendant nonetheless claims that the trial court prevented defense counsel from asking Nelson five questions on cross-examination that would have afforded the defense a reasonable opportunity to reveal weaknesses that might cast doubt on the reliability of Nelson's testimony. These questions included: (1) whether certain Greenwich police officers, including Detective Iorfino, told Nelson what they wanted him to say in order to obtain the cooperation agreement;[5] (2) whether Nelson had confessed or intended to "take the rap" for the Greenwich robbery and the attempted homicide;[6] (3) whether Nelson made changes to his

written statement to the police after entering into the cooperation agreement;[7] (4) whether the supervisory assistant state's attorney (prosecutor) was the person who would decide whether Nelson was telling the truth; and (5) whether Nelson was compelled, in order to secure the benefit of the cooperation agreement, to stand by the statements he had made to the police in exchange for the cooperation agreement.[8]

Following a careful review of the record, we conclude that the defendant's sixth amendment right to confrontation was not violated when the trial court restricted defense counsel's cross-examination by preventing him from asking Nelson the foregoing questions. With respect to the first question concerning whether Detective Iorfino told Nelson what the police wanted him to say in exchange for the cooperation agreement, which the trial court precluded in part on the ground that it was based on a document not in evidence, Nelson already had testified that Detective Iorfino told him during the September, 2010 interview about certain details relating to the robbery that he wanted Nelson to confirm in exchange for the agreement.[9] Similarly, with respect to the second question concerning whether Nelson had confessed to the police or intended to "take the rap" for the Greenwich robbery and the attempted homicide, which the trial court also precluded because it was based on a document not in evidence, even if Nelson had responded in the affirmative, he already had testified that he lied repeatedly to the police regarding the extent of his participation in the Greenwich robbery. Thus, the trial court's preclusion of potential testimony that Nelson was willing to "take the rap" for the Greenwich robbery would not have raised a new ground on which to challenge his credibility. It merely would have added another inconsistent statement in a long line of inconsistent statements regarding the extent of his participation in the Greenwich robbery and the attempted homicide.

With respect to the third question of whether Nelson made changes to his written statement after entering into the cooperation agreement, the defendant misunderstands the question defense counsel wanted to ask. Counsel did not ask Nelson that question but, rather, asked whether the police wanted him to change certain statements he made prior to December, 2010, in which he had lied under oath during his interviews with the police despite the *promise* of a cooperation agreement. Accordingly, the trial court did not preclude defense counsel from asking the question alleged to have been asked in this appeal.

As for defense counsel's query regarding whether the prosecutor himself would determine whether Nelson was telling the truth, this question was not relevant to Nelson's credibility or reliability as a witness because it had nothing to do with his testimony regarding either

his or the defendant's participation in the Norwalk and Greenwich robberies.

Finally, the question regarding whether Nelson was compelled to stand by his past truthful testimony or risk losing the benefit of the cooperation agreement was similar to many other questions by the defense intended to challenge Nelson regarding his obligation to tell the truth in exchange for the cooperation agreement. We thus conclude that the trial court did not improperly preclude defense counsel from asking this question because Nelson had given extensive prior testimony on direct examination and cross-examination, and subsequently gave additional testimony on redirect examination, describing his initial lies to the police and his eventual decision to tell the truth in exchange for the cooperation agreement.

In sum, we conclude that the trial court's rulings did not violate the defendant's sixth amendment right to confrontation because the defense was given ample opportunity throughout cross-examination to challenge Nelson's credibility. The issue of his credibility also was raised on direct and redirect examination, when he stated in response to repeated questioning that he initially had lied to the police over a period of several months regarding his participation in the Greenwich robbery and that he finally had decided to tell the truth in order to "save [him]self" from having to serve significant prison time for multiple pending charges. In addition, the defense was able to establish that Detective Iorfino had presented Nelson with certain details relating to the Greenwich robbery that he hoped Nelson would confirm by telling the truth in exchange for the cooperation agreement. Accordingly, we next consider the defendant's claim that the restrictions on defense counsel's cross-examination of Nelson constituted an abuse of the trial court's discretion.

The defendant argues that the trial court abused its discretion for the same reasons its restrictions on cross-examination violated his sixth amendment right of confrontation. We disagree. Some of the questions that the trial court precluded would have elicited testimony on facts already established, such as the questions concerning whether Detective Iorfino told Nelson what the police wanted him to say in exchange for the cooperation agreement, whether Nelson intended to "take the rap" for the Greenwich robbery and the attempted murder, and whether Nelson was compelled, in order to secure the benefit of the cooperation agreement, to stand by the statements he had made to the police in exchange for the cooperation agreement. See *Motzer* v. *Haberli*, 300 Conn. 733, 742, 15 A.3d 1084 (2011) ("[o]ur rules of evidence vest trial courts with discretion to exclude relevant evidence when its probative value is outweighed . . . by considerations of undue delay, waste of time or needless presentation of cumulative

evidence" [internal quotation marks omitted]); see also Conn. Code Evid. § 4-3. Of the two remaining questions the trial court allegedly precluded, one question was never asked and the other question regarding whether the prosecutor was the person who would decide if Nelson was telling the truth was not relevant to the issues of Nelson's credibility or to his testimony regarding the Norwalk and Greenwich robberies. Accordingly, the trial court did not abuse its discretion in restricting defense counsel's cross-examination of Nelson.

The judgments are affirmed.

In this opinion the other justices concurred.

[1] The defendant was convicted of one count of murder in violation of General Statutes § 53a-54a (a), one count of felony murder in violation of General Statutes § 53a-54c, one count of attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) (2), two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and two counts of robbery in the second degree in violation of General Statutes (Rev. to 2009) § 53a-135 (a) (2).

[2] The sixth amendment right to counsel is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See, e.g., *Gideon* v. *Wainwright*, 372 U.S. 335, 342–44, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[3] The defendant argues that counsel made a strategic decision at trial not to deny that the defendant had committed the Stamford robbery and not to attack the reliability of the Stamford confession because the trial court's joinder of the three cases had necessitated that counsel distinguish the modus operandi of the Stamford robbery from that of the Norwalk and Greenwich robberies in order to establish that the defendant was not guilty of the Norwalk and Greenwich robberies. Defense counsel's trial strategy, however, has nothing to do with the issue that the defendant raises on appeal, namely, whether he was deprived of his sixth amendment right to counsel when the trial court admitted evidence of the incriminating statements he made to Simmons. Accordingly, this argument has no merit.

[4] The sixth amendment right to confrontation is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 403, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[5] Regarding this issue, the defendant cites the following testimony:

"[Defense Counsel]: Mr. Nelson, Detective Iorfino kept telling you things that he wanted you to say, right?

"[The Supervisory Assistant State's Attorney (Prosecutor)]: Your Honor, at this point, what I am going to ask for if the question is not going to be about what Detective Iorfino—if the questions are going to be about what Detective Iorfino had to say during this interview as opposed to what his responses were, I think it's already out that he denied knowing anything about the case. I am just going to ask that it be read to the jury, the September, the August 10—

"The Court: The questions are being asked about a document that is not in evidence, and nobody has asked to put it in. So, the witness had indicated what he had indicated. I think we've been over this repeatedly, so let's wrap up the cross-examination, counsel."

Thereafter, the following exchange occurred:

"[Defense Counsel]: And later on, some of the other details that you were given were that you were at a barber shop with [the defendant], right?

"[Nelson]: Yes.

"[Defense Counsel]: He told you to say that?

"[Nelson]: Yes.

* * *

"[The Prosecutor]: If we could just put this in, please.

"The Court: I am going to sustain the objection. I am going to sustain the objection.

* * *

"[Defense Counsel]: At that time, you told them the details that they wanted you to tell them, correct?

"[Nelson]: Yes.

"[The Prosecutor]: Objection. How does he know what they want? He gave details.

"The Court: Sustained.

"[Defense Counsel]: They told you the details that they wanted, correct?

"[The Prosecutor]: Objection, Your Honor. They did not tell him and I—

"The Court: Sustained, sustained.

"[Defense Counsel]: You knew at that time, after they had spoken to you, that they have certain evidence, correct?

"[The Prosecutor]: Your Honor—

"The Court: I am going to sustain the objection. At the appropriate time, [defense counsel], you will have a chance to make any argument you want. This is not the time to make arguments."

[6] With respect to this issue, the defendant refers to the following exchange:

"[Defense Counsel]: . . . Didn't you tell the officers that you were going to take the rap for [the Greenwich robbery] yourself?

"[The Supervisory Assistant State's Attorney (Prosecutor)]: If we may, Your Honor. I have no objection to this coming in—

"The Court: Is there an objection?

"[Defense Counsel]: Yes, there is an objection.

"The Court: He is the one that stood up.

"[Defense Counsel]: Oh, I am sorry.

"The Court: Are you objecting to that question?

"[The Prosecutor]: Yes, Your Honor, cross-examination off a document not in evidence.

"The Court: Sustained.

"[Defense Counsel]: Your Honor, I am asking him what he said.

"The Court: I heard what you asked. There was an objection. I sustained the objection. Move on.

"[Defense Counsel]: Mr. Nelson, it wasn't until the police told you that there were more people involved that you decided to change your story and not take the rap for yourself, correct?

"[The Prosecutor]: If I may object, Your Honor.

"The Court: Sustained.

"[The Prosecutor]: It's [a] mischaracterization of what he just testified to this morning."

[7] The defendant relies on the following exchange:

"[Defense Counsel]: Isn't it true that the Greenwich Police Department got you because they found out that you had told some lies to them in the previous interview and statement that you had given?

"[Nelson]: Yes.

"[Defense Counsel]: And they wanted you to straighten it out, correct?

"[Nelson]: Yes.

"[Defense Counsel]: They wanted you to change your statement?

"[Nelson]: Yes.

"[Defense Counsel]: And this was after you had already sworn it under oath, correct?

"[Nelson]: Yes.

"[Defense Counsel]: And this was after you had already been promised your cooperation agreement?

"[The Supervisory Assistant State's Attorney (Prosecutor)]: Objection. It's the same day, December 10. I think the document in evidence says December 10.

"[Defense Counsel]: The actual cooperation agreement that is—

"The Court: Are you asking a question or are you making a comment now?

"[Defense Counsel]: I was responding to the objection if there was an objection.

"The Court: I sustained the objection. Let's move on."

[8] The defendant maintains that Nelson repeatedly testified that the only thing he had to do to satisfy his end of the bargain was to tell the truth. When defense counsel asked Nelson, however, if the prosecutor would be the one to decide whether he had told the truth, the prosecutor objected, claiming that the jury would make that decision. The court sustained that objection. Defense counsel later asked: "[W]hatever you tell them as the details of this case as you've told them in the past that they've said that they would accept as the truth, okay, you've got to stick with that [or], otherwise, you are going to lose the benefit of your agreement, right?" The court sustained the prosecutor's objection to that question.

[9] This issue was addressed in the following exchange regarding Nelson's September, 2010 interview with Detective Iorfino:

"[Defense Counsel]: Now, during that interview, Detective Iorfino tried to get you to talk about the Greenwich [robbery], didn't he?

"[Nelson]: Yes.

"[Defense Counsel]: And you didn't want to talk about it?

"[Nelson]: No.

"[Defense Counsel]: In fact, you denied involvement many times during that interview, correct?

"[Nelson]: Yes.

"[Defense Counsel]: And, in response to your denials in that interview, Detective Iorfino told you some details about this case, correct?

"[Nelson]: Yes.

"[Defense Counsel]: He told you that they already had [a coconspirator], right?

"[Nelson]: Yes.

\* \* \*

"[Defense Counsel]: And, despite what Detective Iorfino told you, you continued to deny being involved in any way with the Greenwich [robbery], correct?

"[Nelson]: Yes.

"[Defense Counsel]: And one of the ways that Detective Iorfino tried to get you to acknowledge the details was to tell you that you would get a free walk, correct?

"[Nelson]: Yes.

"[Defense Counsel]: And that didn't persuade you either at that point, all the efforts he made in that regard, correct?

"[Nelson]: Yes.

"[Defense Counsel]: And [Detective] Iorfino also told you . . . some of the things that he wanted you to say, correct?

"[Nelson]: Yes.

\* \* \*

"[Defense Counsel]: And he told you repeatedly that he knows the facts. He just wants you to say them, right?

"[Nelson]: Yes."

————————————————