******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RANDY MURALLO *v.* UNITED BUILDERS
SUPPLY CO., INC.
(AC 40442)

Lavine, Bright and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, breach of contract. The plaintiff had purchased materials for the construction by the defendant of two decks on the plaintiff's property. After the completion of the two decks, the plaintiff alleged that the decking material was defective and complained to the defendant several times. He thereafter received a charge-back from his credit card company for the cost of the decking materials. Following discussions with B, the defendant's principal, B sent the plaintiff an e-mail in 2009 indicating that the defendant would not provide any material for a deck replacement because the plaintiff had received the charge-back for the materials, but that the defendant would provide the labor for replacement of the decks if the plaintiff chose to replace them. Although the plaintiff subsequently informed the defendant that he wanted to replace his decks, the defendant never provided the labor to replace the decks, and this action followed. During the trial, B testified on two separate occasions that the 2009 e-mail set forth the parties' agreement. The trial court rendered judgment in favor of the defendant, from which the plaintiff appealed to this court, claiming, inter alia, that the trial court erred in finding that the parties had not formed a contract. *Held* that the trial court's finding that the 2009 e-mail was an offer that the plaintiff never accepted was clearly erroneous and not supported by any evidence in the record: the defendant did not dispute the plaintiff's claim that he and B had reached an agreement before B sent the 2009 e-mail, and it was undisputed that the e-mail memorialized the parties' agreement regarding the replacement of the plaintiff's decks with labor provided by the defendant, and because the court did not make findings regarding whether the plaintiff performed his obligations under the agreement and, if so, whether the defendant breached any contractual duties it owed the plaintiff, nor did it address what damages, if any, the plaintiff would be entitled to recover if the defendant did breach the agreement, a new trial on the plaintiff's breach of contract claim was necessary; moreover, in light of that determination, it was not necessary to address the plaintiff's challenge to the trial court's finding that the decking materials he had purchased from the defendant were not defective.

Argued February 15—officially released June 12, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New London, small claims session, where the matter was transferred to the regular civil docket; thereafter, the plaintiff filed an amended complaint; subsequently, the matter was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee; judgment in favor of the defendant, from which the plaintiff appealed to this court. *Reversed in part; further proceedings.*

Eugene C. Cushman, for the appellant (plaintiff).

Garon Camassar, for the appellee (defendant).

*Opinion*

BRIGHT, J. The plaintiff, Randy Murallo, appeals from the judgment of the trial court rendered after a trial to the court in favor of the defendant, United Builders Supply Co., Inc. The plaintiff claims that the court erred in finding that (1) the parties had not formed a contract and (2) the decking materials sold by the defendant were not defective. We conclude that the court's finding that no contract existed between the parties was clearly erroneous. Accordingly, we reverse in part the judgment of the trial court.

The following facts and procedural history, as found by the trial court or as undisputed in the record, are relevant to our review. In August and September, 2007, the plaintiff purchased sufficient quantities of GeoDeck materials for the construction of three outdoor decks on his property in Waterford, where he was building two houses. The plaintiff intended to occupy one of the houses (residence), which would include two decks. The plaintiff paid the defendant $4749.81 for the decking materials by way of two charges to his American Express account. All construction on the property, including the residence and the decks attached thereto, was completed in or about November, 2007, and the Waterford building official issued the plaintiff a certificate of occupancy for his residence at that time. Shortly thereafter, the plaintiff noticed spacing between the boards of the decks at his residence, and he contacted the defendant in order to have someone inspect the decks. Jared Beaulieu, the defendant's vice president, went to the plaintiff's property to inspect the decks, and he found that they appeared to be in good condition. The plaintiff also was told that the gaps between the boards would close as the weather became warmer during the summer.

The plaintiff moved into the residence in April, 2008, and by the fall of 2008, the plaintiff believed that the condition of the decks at his residence had gotten worse. He made several phone calls to the defendant regarding his complaint about the decks, and there were several e-mail exchanges between the plaintiff and the defendant's representatives. The plaintiff, believing that the defendant was not going to resolve his complaint, contacted American Express to dispute the charges to his account. Eventually American Express issued a charge-back on the defendant's account in January, 2009, so that the plaintiff was credited for the cost of the decking materials.[1]

Following further discussions with the plaintiff, on September 2, 2009, Beaulieu sent an e-mail to the plaintiff stating: "[A]s discussed with you previously: 1. [W]e will not provide any material for the deck replacement at your home . . . as the original material was credited back through you[r] merchant card. 2. [W]e will provide

the labor with our own crew for the replacement of the deck when and if it is replaced by you . . . that labor would preferably be during a 'down' time of our business year." On that same date Beaulieu sent another e-mail with a quote for certain decking materials, with the notation "will refine if and when ready." There were no further communications between the plaintiff and the defendant until April, 2011, when the defendant sent an account statement to the plaintiff that reflected a balance on the plaintiff's account.[2] The plaintiff returned the account statement to the defendant with a handwritten notation indicating that the plaintiff wanted to replace his decks, and he needed to "schedule workers" to perform the labor at no charge. The defendant never provided the labor to replace the plaintiff's decks.

In May, 2013, the plaintiff commenced this action against the defendant in small claims court as a self-represented party. In June, 2013, the defendant had the matter transferred to the regular docket of the Superior Court pursuant to Practice Book § 24-21. On July 23, 2013, after obtaining counsel, the plaintiff filed the seven count operative complaint, alleging, inter alia, breach of contract arising from the defendant's failure to provide the labor to replace the decks at the plaintiff's residence.[3] In addition, the plaintiff sought attorney's fees pursuant to General Statutes § 52-251a[4] in the seventh count of the operative complaint. The case was tried to the court over the course of two days on April 26 and April 27, 2017.

At trial, the plaintiff testified that he and Beaulieu had reached an agreement to resolve the plaintiff's complaint whereby the plaintiff would pay for new decking materials and the defendant would provide the labor to install the decks. After reaching that agreement, the plaintiff asked Beaulieu to put the agreement in writing, and Beaulieu sent the e-mail to the plaintiff memorializing their agreement on September 2, 2009. Beaulieu acknowledged, on two separate occasions during his testimony at trial, that the September 2, 2009 e-mail set forth the parties' agreement. On the first day of the trial, the following examination occurred between plaintiff's counsel and Beaulieu:

"Q: Okay. And you set forth what your agreement is in this e-mail, did you not?

"A: Yes, but, once again, you're leaving out timeliness.

"Q: I'm not asking [about] timeliness. I'm asking if you agree in that document that you [would] provide the labor to replace [the plaintiff's] deck[s].

"A: That's correct."

Then, on the second day of the trial, the following examination occurred between plaintiff's counsel and Beaulieu regarding the September 2, 2009 e-mail:

"Q: The document says, as we discussed previously, correct?

"A: Yes. Okay.

"Q: Okay. What does that mean?

"A: Obviously we had a telephone conversation.

"Q: All right. And did you come to an agreement?

"A: I believe that this was—we will not provide any material for the deck replacement at your home as the original material was credited back to your merchant card. We will provide the labor with our own crew for the replacement of the deck when and if [replaced] by you, that labor would preferably be at our down time.

"Q: Now, does that reflect the discussion you had previously?

"A: Judging on this I'd say yes. . . .

"Q: You reached a verbal agreement and then you put it in writing.

"A: It looks that way to me, sir."

After trial, the court rendered judgment in favor of the defendant on all counts of the plaintiff's complaint. Despite the testimony of both the plaintiff and Beaulieu regarding their agreement, the court found, inter alia, that the September 2, 2009 e-mail was an offer that the plaintiff never accepted, and, therefore, the court held that there was no contract between the parties. This appeal followed.

I

The plaintiff first claims that the court's finding that the e-mail dated September 2, 2009, was an offer that the plaintiff never accepted is clearly erroneous. We agree.

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . .

"In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make.

. . . [A]n agreement must be definite and certain as to its terms and requirements." (Citations omitted; internal quotation marks omitted.) *Electric Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 301–302, 912 A.2d 1117 (2007).

The court held that there was no contract between the parties on the basis of its finding that the September 2, 2009 e-mail was an offer from the defendant that the plaintiff never accepted. Our review of the record does not reveal any evidence that supports the court's finding that the e-mail constituted an offer. Both the plaintiff and Beaulieu[5] acknowledged that they had reached an agreement following their discussions regarding the plaintiff's complaint. They further agreed that the September 2, 2009 e-mail set forth their agreement that the defendant would provide the labor necessary to replace the plaintiff's decks when the plaintiff purchased new materials. Furthermore, the trial court acknowledged that the parties had reached an agreement during the plaintiff's closing arguments. Plaintiff's counsel asserted that Beaulieu agreed that the e-mail reflected the agreement he had reached with the plaintiff and the court responded: "More or less, yes."

On the basis of our review of the record, we conclude that the court's finding that the e-mail constituted an offer is clearly erroneous. The defendant did not dispute the plaintiff's claim that he and Beaulieu reached an agreement before Beaulieu sent the e-mail on September 2, 2009, memorializing the parties' agreement. Moreover, there is no evidence in the record to support the court's finding that the e-mail constituted an offer that the plaintiff never accepted. Instead, the evidence reveals that it was undisputed that the e-mail memorialized the agreement that the plaintiff and Beaulieu had reached regarding the replacement of the plaintiff's decks. Because the court improperly found that the e-mail constituted only an offer, rather than the parties' agreement, the court did not make any findings regarding whether the plaintiff performed his obligations under the agreement, and, if so, whether the defendant breached any contractual duties it owed the plaintiff; nor did the court address what damages, if any, the plaintiff would be entitled to recover if the defendant did breach the agreement. Accordingly, a new trial is required on the plaintiff's breach of contract claim.[6]

II

The plaintiff also claims that the trial court's finding that the decking materials purchased from the defendant were not defective is clearly erroneous. The plaintiff argues that if the decking materials were defective, then his forbearance of any legal action based on the defective materials against the defendant was "clearly adequate consideration for the mutual promises which were made in the fall of 2009." We need not address this claim in light of our conclusion in part I of this opinion.

"[I]t is a general rule of law that forebearance to prosecute a cause of action, where the right is honestly asserted under the belief that it is substantial, although it may in fact be wholly unfounded, is a valuable consideration which will support a promise. . . . Forbearance, however, is not a sufficient consideration unless the claimant had some reasonable ground for belief in the justice of the claim . . . or if the claim is not made in good faith." (Citations omitted; internal quotation marks omitted.) *Iseli Co.* v. *Connecticut Light & Power Co.*, 211 Conn. 133, 136, 558 A.2d 966 (1989).

Because we concluded in part I of this opinion that the parties had an agreement resolving the plaintiff's legal claims against the defendant regarding the decking materials, it simply is not relevant to the plaintiff's breach of contract claim whether the materials in fact were defective. Furthermore, the defendant did not argue before the trial court that the plaintiff did not make his claim in good faith. In fact, the defendant never claimed that the parties' agreement was not supported by any consideration. Accordingly, we decline to address the plaintiff's claim.

The judgment is reversed only with respect to the first count of the plaintiff's complaint and the case is remanded for a new trial on that count, including any claim for attorney's fees and costs pursuant to § 52-251a; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] All parties agreed that, as of the second day of trial, the plaintiff had been reimbursed for the cost of the decking materials and that the defendant had not been paid for the plaintiff's decking materials.

[2] The statement was for materials provided to the plaintiff that are unrelated to the decks at issue in this case.

[3] The plaintiff's breach of contract claim is set forth in the first count of the operative complaint. In particular, paragraph 9 of the first count alleges that "[t]he plaintiff gave timely notice of the defects and breach of warranty to the defendant, and the defendant made promises to the plaintiff to rectify the problem, but it has neglected and refused to do so." Although the first count includes allegations suggesting that the defendant breached an implied warranty and made misrepresentations as to the quality of the decking materials, given the allegation in paragraph nine and the claims made by the plaintiff on appeal, we understand the first count to state solely a claim for a breach of the parties' contract entered into by the plaintiff and Beaulieu on or about September 2, 2009. The remaining counts of the operative complaint alleged breach of warranty, fraud, civil theft, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On appeal, the plaintiff raises claims related to only the breach of contract count.

[4] General Statutes § 52-251a provides: "Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the Superior Court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court."

[5] Alexander Slosberg, the defendant's president, acknowledged that Beaulieu, as the defendant's vice president, had the authority to make agreements for the defendant.

[6] A request for costs and attorney's fees pursuant to § 52-251a requires that the plaintiff prevail in the small claims matter; therefore, such a request is derivative of the underlying cause of action. See, e.g., *Doyle Group* v. *Alaskans for Cuddy*, 164 Conn. App. 209, 231, 137 A.3d 809 ("court's decision of entitlement to fees . . . require[s] an inquiry separate from the decision

on the merits—an inquiry that cannot even commence until one party has prevailed" [internal quotation marks omitted]), cert. denied, 321 Conn. 924, 138 A.3d 284 (2016). In the present case, because the court rendered judgment in favor of the defendant on all counts of the operative complaint, the plaintiff was not entitled to an award of costs or attorney's fees pursuant to § 52-251a, as alleged in the seventh count of his operative complaint. On remand, if the plaintiff prevails on his breach of contract claim, then, as the prevailing party, the court may award him costs and attorney's fees pursuant § 52-251a. See footnote 4 of this opinion. Accordingly, a separate cause of action requesting such relief is not necessary; such a request more properly should be raised in a prayer for relief. Nevertheless, because the plaintiff specifically raised this requested relief in his operative complaint, we construe count seven as part of his prayer for relief, as should the trial court on remand.

———————————————