******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# WATSON REAL ESTATE, LLC *v.* WOODLAND RIDGE, LLC, ET AL.
## (AC 40450)

Alvord, Moll and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for, inter alia, breach of contract. K, a member of the plaintiff, had purchased a lot in a residential subdivision owned by the defendant W Co. In connection therewith, the parties entered into an escrow agreement to cover the costs of, inter alia, the paving of a common driveway to the subdivision. Pursuant to the agreement, W Co. was required to complete the common driveway to the point at which it became an individual driveway for each lot, but was not to put the final layer of pavement on the common driveway until construction of all four houses was complete, as indicated by the issuance of a certificate of occupancy, or five years from the date of the agreement, whichever occurred first. The agreement provided a procedure by which the plaintiff could contract with a third party to complete the work and seek reimbursement from the escrow funds if W Co. failed to complete the work in a timely manner. After the construction of K's home was completed, K contracted and paid a third party to pave the portion of the common driveway that connected to K's individual driveway in order to obtain a certificate of occupancy, and K also paid an unpaid bill incurred by an agent for W Co. related to an easement map for the common driveway. Thereafter, W Co. contracted to have a third party pave the final portion of the common driveway but did not have a second final layer of pavement installed, which K believed was required under the escrow agreement. The plaintiff never submitted invoices to be reimbursed for the costs it expended in extending the common driveway to the entrance of its property and settling the invoice for the easement map, as required under the escrow agreement, and it, thus, was never reimbursed for those expenditures. The plaintiff subsequently brought this action, claiming, inter alia, that W Co. breached the agreement by failing to install a second, final layer of pavement over the common driveway. The trial court rendered judgment in favor of W Co. and determined that because there was no meeting of the minds as to the specifics of the common driveway, the plaintiff failed to sustain its burden in proving its breach of contract claim. Thereafter, the court denied the plaintiff's request for leave to amend its revised complaint to add a new count of unjust enrichment, and the plaintiff appealed to this court. *Held:*

1. The plaintiff could not prevail on its claim that the trial court improperly failed to find that there was a meeting of the minds between the parties as to the number of layers of pavement to be applied to the common driveway, which was based on its claim that the trial court should have drawn an adverse inference against W Co. for its failure to call a certain witness to rebut certain parol evidence presented by the plaintiff; even if the fact finder could properly draw an adverse inference from a party's failure to call an available witness, it is not required to do so, as the drawing of an adverse inference is permissive rather than mandatory, and, therefore, the trial court's failure to draw such an inference in the present case was not improper as a matter of law.

2. The plaintiff's claim that the trial court improperly failed to find that W Co. breached the escrow agreement by not reimbursing the plaintiff for the costs it had incurred was not reviewable; although the plaintiff correctly asserted that there was undisputed evidence presented at trial establishing that the plaintiff had incurred costs to have the common driveway extended and to settle the invoice for the easement map, the plaintiff did not allege in the revised complaint or at trial that W Co. was contractually required to reimburse the plaintiff for those costs, and it, thus, could not now attempt to recover those sums on appeal by refashioning its request for damages as an independent breach of contract claim that was neither alleged in the complaint nor actually litigated at trial.

3. The plaintiff could not prevail on its claim that the trial court improperly denied its request for leave to amend its revised complaint to add a claim of unjust enrichment related to W Co.'s failure to reimburse the plaintiff for the costs of extending the common driveway and settling the invoice for the easement map; although the record did not reflect the court's reasoning in denying the plaintiff's request for leave to amend its revised complaint, the court nevertheless acted within its discretion in denying the request, as the plaintiff did not seek to amend the complaint until well after the trial had ended and almost four months after the court had rendered its judgment.

Argued September 26, 2018—officially released January 22, 2019

*Procedural History*

Action to recover damages for, inter alia, alleged breach of contract, brought to the Superior Court in the judicial district of Hartford, where the defendant Peter J. Alter filed a counterclaim and cross claim; thereafter, the court, *Elgo*, *J.*, granted the motion for partial summary judgment filed by the named defendant et al. and rendered judgment in part thereon; subsequently, the defendant Leonard Bourbeau was defaulted for failure to plead; thereafter, the matter was tried to the court, *Dubay*, *J.*; judgment in part for the named defendant; subsequently, the court, *Dubay*, *J.*, granted the plaintiff's motion to reargue, but denied the relief requested therein, and sustained the named defendant's objection to the plaintiff's request for leave to amend the revised complaint, and the plaintiff appealed to this court. *Affirmed.*

*Jeffrey J. Mirman*, for the appellant (plaintiff).

*Frank A. Leone*, for the appellee (named defendant).

*Opinion*

BEAR, J. This action arises out of an escrow agreement entered into by the parties in conjunction with the purchase of a lot in a residential subdivision owned by the defendant Woodland Ridge, LLC.[1] The plaintiff, Watson Real Estate, LLC, appeals from the judgment of the trial court, rendered following a bench trial, in favor of the defendant on the plaintiff's breach of contract claim, as well as from the court's subsequent order denying the plaintiff's request for leave to amend its revised complaint.[2] The plaintiff claims on appeal that the court (1) improperly failed to find that there was a meeting of the minds between the parties as to the specifications of the common driveway that the defendant was required, under the escrow agreement, to install within the subdivision,[3] (2) improperly failed to find that the defendant breached the escrow agreement by not reimbursing the plaintiff for costs it incurred in relation to certain work that the defendant was required under the agreement to complete, and (3) abused its discretion in denying the plaintiff's request for leave to amend its revised complaint to conform to the evidence adduced at trial. We affirm the judgment of the trial court.

The following facts, which either were found by the trial court or are undisputed in the record, and procedural history are relevant to this appeal. The defendant was the owner and developer of a four lot residential subdivision located on the westerly side of Woodland Street in Glastonbury. The subdivision consists of two front lots abutting Woodland Street (lots 1 and 2) and two rear lots abutting the western boundaries of the front lots (lots 3 and 4). A common driveway providing ingress and egress to the subdivision runs west from Woodland Street past the entrances to lots 1 and 2 and terminates at the entrances to the rear lots.

In May, 2006, H. Kirk Watson, a member of the plaintiff,[4] entered into an agreement with the defendant for the purchase of lot 1. At the time of the execution of the purchase agreement, the common driveway had been paved only from Woodland Street to a point 118 feet before the entrance to lot 1; the remainder of the driveway, including the portion passing along the entrance to lot 1, remained unpaved. Consequently, Watson, in his capacity as a member of the plaintiff, entered into an agreement with the defendant and Attorney Peter J. Alter to create an escrow fund from a portion of the defendant's proceeds from the sale of lot 1 to assure the defendant's completion of the common driveway and certain other improvements and construction that remained to be completed (escrow agreement). Under the escrow agreement, the defendant was to deposit with the escrow agent, Alter, the sum of $51,000, which represented "a fair estimate of the cost of completion of the [w]ork."

The particular items that remained to be completed were set forth in a punch list that was attached to the escrow agreement as exhibit A. Pursuant to exhibit A, the defendant was required to "complete the common driveway to the point at which it becomes an individual driveway for each approved lot," but the defendant was not to "put the final course of bituminous pavement on the common driveway until construction of all four houses [was] complete (as indicated by the issuance of a certificate of occupancy), or five (5) years from the date of [the escrow agreement], whichever shall first occur." The stated rationale for this delay was to "avoid damage to the final pavement as may be caused by heavy construction vehicles using the driveway during home construction." As Watson later testified at trial, at the time he executed the escrow agreement, he believed that this language required the defendant to initially extend the existing layer of pavement along the remainder of the driveway and, then, at the appropriate time, install a second layer of pavement over the entire length of the driveway. Per exhibit A, the defendant was also required to install a common electric power service from which each lot could secure individual service.

Because the parties recognized that the work needed to be completed before the plaintiff could secure a building permit and a certificate of occupancy, the escrow agreement provided for a procedure by which the plaintiff could contract with a third party to complete the work and seek reimbursement from Alter out of the escrow funds if the defendant failed to complete the work in a timely manner. Pursuant to this procedure, the plaintiff was to give written notice to the defendant that the plaintiff's construction project required that the work be completed within a reasonable time. If the defendant subsequently failed to complete the work within thirty days, the plaintiff was then authorized to contract for the completion of the work, and, "upon submission of an invoice or contract for performance from a third party contractor, [Alter] shall advance the funds from the escrow agreement to satisfy the invoice or contract provisions."

Upon the closing of the transaction, Watson took title to the property in the name of the plaintiff and began developing the property. Between the time of closing and the completion of the plaintiff's house, no additional paving of the common driveway was done. Watson was told by the town, however, that in order to obtain a certificate of occupancy, the paved portion of the common driveway needed to be extended to the entrance of the plaintiff's property. Consequently, in 2008, Watson contracted with a third party to pave this portion of the common driveway at a cost of $4914, which Watson paid. The remainder of the driveway, however, remained a dirt road. Watson also paid $530.70

to Megson & Heagle Civil Engineers & Land Surveyors, LLC (Megson & Heagle), to satisfy an unpaid bill incurred by Daniel Zak, an agent for the defendant, in connection with the preparation of a Connecticut Light and Power Company easement map (easement map) for the common driveway.[5]

Between 2008 and 2011, no additional paving was done on any portion of the common driveway. In September, 2011, Zak notified Alter that the defendant intended to complete all of the remaining work required under the escrow agreement. The defendant, thereafter, engaged R & J Paving, LLC (R & J Paving), to pave the final portion of the common driveway, from the entrance of the plaintiff's property to the entrances to lots 3 and 4. The defendant did not, however, have a second, final layer of pavement installed, which Watson believed was required under the escrow agreement. Upon receipt from Zak of the paving invoice, Alter released $9000 to R & J Paving and divided the remainder of the escrow funds between Zak and Leonard Bourbeau, a member of the defendant. The plaintiff was never reimbursed for the costs it expended in extending the common driveway to the entrance to its property and settling the invoice for the easement map. The plaintiff, however, had not submitted invoices for these expenditures to Alter as required under the escrow agreement.

The plaintiff commenced the present action in March, 2013. In count two of the operative, revised complaint— the only count at issue in this appeal[6]—the plaintiff alleged, inter alia, that the defendant breached the escrow agreement by improperly seeking the release of escrow funds.[7] The plaintiff further alleged that, as a result, it sustained damages, including the costs to complete the work that the defendant had failed to perform.[8] The matter was tried to the court on September 20 and 22, 2016.

At trial, the plaintiff appeared to abandon its claim that the defendant improperly sought the release of the escrow funds. The plaintiff, instead, proceeded under a theory that the defendant breached the escrow agreement by failing to install a second, final layer of pavement over the common driveway.[9] The principal issue at trial was whether the defendant's obligation under the agreement to install a "final course of bituminous pavement" was intended to require the defendant to apply *two* layers of pavement. On this issue the parties presented contradictory evidence.

In its case-in-chief, the plaintiff presented parol evidence that, according to the plaintiff, tended to show that the parties had intended that the defendant be required to install two layers of pavement. Specifically, the plaintiff elicited the testimony of Watson, who testified that, prior to entering into the purchase agreement for lot 1, he and Zak had discussed the issue of the

completion of the common driveway, and Zak had represented that there would be a "first paving and a second paving." Watson testified that he understood Zak's comments to mean that there would first be an "initial layer" of pavement sufficient for use during the construction of houses in the subdivision and that this would eventually be followed by a "final layer" of pavement. According to Watson, the escrow agreement was meant to memorialize this understanding.

As additional support for its position, the plaintiff elicited the testimony of Kevin Burton, the owner of one of the other lots in the subdivision, as well as the testimony of Roger Tabshey, the co-owner of the paving company with which the plaintiff had contracted to extend the common driveway. Burton testified that he purchased lot 2 from the defendant in late 2007 or early 2008 and that he likewise spoke with Zak prior to the purchase. According to Burton, Zak had represented that the entire common driveway would be completed as part of the development and that the "finish point" would be the second coat of the driveway. Tabshey testified that, in building a common driveway within a subdivision, it is common practice to install an initial layer of asphalt and then, after most of the home construction is complete, apply a second, final layer.

In its case-in-chief, the defendant adduced evidence that, according to the defendant, tended to show that the parties had intended for the defendant to install only one layer of pavement. Specifically, the defendant elicited testimony from Alter, who had represented the defendant in connection with the sale of lot 1 and had negotiated the terms of the escrow agreement with the plaintiff's attorney, Nicholas Paindiris. Alter testified that he and Attorney Paindiris had arrived at the $51,000 figure, in part, from a written proposal from R & J Paving to "extend [the] common driveway from [the] existing pavement to [the] edge of [the driveway for] [l]ot #4." Alter further testified that he had faxed a copy of this proposal to Attorney Paindiris before the escrow agreement was executed. The defendant, therefore, took the position in its posttrial brief that the parties had anticipated only an *extension* of the common driveway and not a repaving of the entire driveway.

In addition to the contradictory evidence of the parties' intent concerning the completion of the common driveway, the parties also presented contradictory evidence as to which of the two versions of the escrow agreement admitted at trial represented the complete agreement. The two versions differ in several respects, but the most important difference is that the defendant's version incorporates the R & J Paving proposal as an attachment.[10] Alter testified that the version of the agreement submitted by the defendant represented the full agreement. Watson, however, testified that the version of the agreement submitted by the plaintiff, which

contains no such attachment, was the version that he had executed and represented the complete agreement.

In its memorandum of decision issued on January 10, 2017, the court found that the amount of the escrow fund had been agreed on by the parties' attorneys and had been determined, in part, by the R & J Paving proposal. The court did not, however, make a determination as to whether this proposal had, in fact, been incorporated into the parties' escrow agreement. Rather, the court found that "[u]nless the R & J Paving proposal was part of the [e]scrow [a]greement as claimed by the [d]efendant, the [version of the] [e]scrow [a]greement [that] the [p]laintiff claims was executed by the parties does not contain any specifications regarding the thickness of the paving or the number of layers of bituminous pavement to be applied to the [c]ommon [d]riveway to satisfy the [d]efendant's obligations. The description of the work to be done by the [d]efendant . . . can only be found in [exhibit A to the agreement] which refers unfortunately and ambiguously to a 'final course of bituminous pavement.' " Consequently, the court determined that it could not "find that there was a meeting of the minds as to the specifics of the common driveway" and concluded that the plaintiff had failed to sustain its burden of proving its breach of contract claim. The court, therefore, rendered judgment in favor of the defendant on count two of the plaintiff's revised complaint.

On January 27, 2017, the plaintiff filed a motion to reargue the court's January 10, 2017 decision, contending that the court had failed to consider certain evidence. Specifically, the plaintiff pointed to Watson and Burton's testimony regarding their conversations with Zak, which, according to the plaintiff, was uncontroverted and established that the defendant had been required under the escrow agreement to install a second layer of pavement. The plaintiff requested that the court, therefore, render judgment in its favor on all issues. Alternatively, the plaintiff requested that the court at least find "that the [d]efendant owes the [p]laintiff for the costs [it] incurred . . . in installing a first course . . . on the common driveway, and for the costs incurred in connection with the [easement] map, and enter judgment in favor of the [p]laintiff . . . ." The court granted the plaintiff's motion and heard additional argument on May 1, 2017, but it ultimately denied the relief requested.

At the May 1, 2017 hearing, the court agreed with the plaintiff that the defendant had been required under the escrow agreement to complete the common driveway and pay for the easement map and that the defendant had incurred costs with respect to these items. Nevertheless, the court disagreed that the plaintiff was entitled to recover these costs from the defendant as part of its breach of contract claim, stating that the

plaintiff "was clearly entitled to that money on an extra contractual basis, but I'm not allowed to award it when it's not [pleaded]." The court further noted, however, that it had been "prepared to make a finding that there was unjust enrichment to that extent."

Consequently, on that same date, the plaintiff filed a request for leave to amend its revised complaint to add a new count alleging unjust enrichment. The defendant filed a written objection to this request the following day, which the court sustained on May 15, 2017. This appeal followed.

I

The plaintiff first claims that the court improperly failed to find that there was a meeting of the minds between the parties as to the number of layers of pavement to be applied to the common driveway. The plaintiff argues that the court "should have drawn an adverse inference against the [defendant] for its failure to rebut [the plaintiff's parol] evidence . . . and should have therefore determined that the parties' [e]scrow [a]greement required the [d]efendant to install a second, final course over the entire length of the common driveway . . . ."[11] Specifically, the plaintiff points to the testimony of Watson and Burton regarding their conversations with Zak and the testimony of Tabshey regarding general practices in the paving industry. As the plaintiff notes, none of this testimony was directly controverted by the defendant at trial, despite Zak being present throughout the trial. The plaintiff claims that the court's failure to draw an adverse inference in such circumstances constituted an error of law. We disagree.

We begin by setting forth our standard of review. Preliminarily, we note that the issue of whether the parties' minds had truly met, as required for the formation of an enforceable contract, is a question of fact subject to the clearly erroneous standard of review. See *Murallo* v. *United Builders Supply Co.*, 182 Conn. App. 594, 600, 190 A.3d 969, cert. denied, 330 Conn. 913, 193 A.3d 49 (2018). In the present case, however, the plaintiff does not argue that the underlying facts found by the court fail to support its conclusion; nor does the plaintiff assign as clear error any of the court's factual findings on this issue. Rather, the plaintiff limits its claim on appeal to the narrow issue of whether the court's failure to draw an adverse inference was improper *as a matter of law*. Consequently, our review of this claim is plenary. See *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 643, 161 A.3d 562 (2017) (claim that court's use of adverse inference constituted error of law was subject to plenary review).

For decades, Connecticut recognized the "*Secondino*"[12] or "missing witness" rule, which "sanctioned a jury instruction that [t]he failure of a party to produce

as a witness one who [1] is available and [2] . . . naturally would be produced permits the inference that such witness, if called, would have exposed facts unfavorable to the party's cause." (Internal quotation marks omitted.) *State* v. *Malave*, 250 Conn. 722, 728–29, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). "That instruction . . . is now, for various policy reasons, prohibited by statute in civil cases; General Statutes § 52-216c; and by [Supreme Court] precedent in criminal cases. . . . Despite the statute and *Malave*, however, the substance of the 'missing witness' rule remains intact . . . . [A]lthough § 52-216c and *Malave* restricted the means by which the trier of fact is apprised of its ability to draw an adverse inference, it is clear that it remains permitted to do so." (Citation omitted; footnotes omitted.) *In re Samantha C.*, 268 Conn. 614, 637–38, 847 A.2d 883 (2004). This inference, however, "is a permissive rather than a mandatory one—that is, one which the [trier of fact] at all times is free to accept or to reject . . . ." *State* v. *Taylor*, 239 Conn. 481, 492, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). In other words, even if the fact finder may properly draw an adverse inference from a party's failure to call an available witness, it is certainly not *required* to do so. Consequently, we cannot conclude that the trial court's failure to draw such inference in the present case was improper as a matter of law.[13] The plaintiff does not otherwise challenge the court's findings and conclusions with respect to this issue.

## II

The plaintiff next claims that the trial court improperly failed to find that the defendant breached the escrow agreement by not reimbursing the plaintiff for the costs it had incurred. As the plaintiff correctly asserts, there was undisputed evidence presented at trial establishing that the plaintiff had incurred costs to have the common driveway extended and to settle the invoice for the easement map. The plaintiff appears to argue that, because these tasks were the responsibility of the defendant under the agreement, the defendant was, therefore, *contractually* required to reimburse the plaintiff for the costs it incurred in performing these tasks itself. Because this claim was not alleged in the revised complaint nor asserted at trial, we decline to review it.

"[T]he principle that a plaintiff may rely only upon what [it] has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . What is in issue is determined by the pleadings and these must be in writing. . . . Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein." (Internal quotation marks omitted.) *Foncello* v. *Amorossi*, 284 Conn. 225, 233, 931 A.2d 924 (2007).

In other words, "[a] plaintiff may not allege one cause of action and recover upon another." (Internal quotation marks omitted.) *Alaimo* v. *Alaimo*, 179 Conn. App. 769, 771, 181 A.3d 149 (2018). Indeed, "[a] judgment upon an issue not pleaded would not merely be erroneous, but it would be void." (Internal quotation marks omitted.) *Foncello* v. *Amorossi*, supra, 233. Consequently, our Supreme Court has stated that appellate courts have "no authority to consider a claim on appeal that was not alleged in the pleadings." Id., 235; see also Practice Book § 60-5 ("[an appellate] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"); *Saye* v. *Howe*, 92 Conn. App. 638, 642, 886 A.2d 1239 (2005) ("claims not presented to or addressed by the trial court are not properly before us and, thus, not ordinarily considered by this court").

In the revised complaint in the present case, the plaintiff alleged only that the defendant breached the escrow agreement by improperly seeking the release of escrow funds. See footnote 7 of this opinion. At trial, the plaintiff additionally claimed that the defendant breached the agreement by failing to install a second, final layer of pavement over the common driveway. Although this additional claim was not pleaded in the complaint, it was actually litigated at trial without objection from the defendant and was, therefore, properly before the court. See footnote 9 of this opinion. Conversely, at no point during the trial did the plaintiff claim that the defendant breached the escrow agreement by failing to reimburse the plaintiff for the costs it incurred in extending the common driveway and settling the invoice for the easement map.[14] Nor did the plaintiff reference such a claim in its posttrial brief. In its posttrial brief, the plaintiff contended only that it was entitled to recover these sums as *damages* for the defendant's failure to install a second layer of pavement. Because the trial court determined that the plaintiff had failed to meet its burden of proving this claim, it did not award the plaintiff any damages. The plaintiff cannot now attempt to recover these sums on appeal by refashioning its request for damages as an independent breach of contract claim that was neither alleged in the complaint nor actually litigated at trial. We, therefore, decline to review this claim. See *Foncello* v. *Amorossi*, supra, 284 Conn. 235 (declining to review plaintiff's claims alleging invasion of privacy for giving unreasonable publicity to plaintiff's private life where plaintiff had failed to allege invasion of privacy on that ground in his amended complaint).

### III

Finally, the plaintiff claims that the trial court erred in denying its request for leave to amend its revised complaint to add a claim of unjust enrichment based on the defendant's failure to reimburse the plaintiff

for the costs of extending the common driveway and settling the invoice for the easement map. The plaintiff argues that it was an abuse of discretion for the court to deny the plaintiff's request where the court had previously recognized, at the hearing on the plaintiff's motion to reargue, that the plaintiff "was clearly entitled to this money on an extra contractual basis." We disagree.

"We review a trial court's decision to deny a request to amend a complaint for an abuse of discretion." *Motzer* v. *Haberli*, 300 Conn. 733, 747, 15 A.3d 1084 (2011). "The law is well-settled that belated amendments to the pleadings rest in the sound discretion of the trial court. . . . [Although] our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonally. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . On rare occasions, this court has found an abuse of discretion by the trial court in determining whether an amendment should be permitted . . . *but we have never found an abuse of discretion in denying an amendment on the eve of trial, long after the conclusion of pretrial proceedings.*" (Emphasis added; internal quotation marks omitted.) *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 691, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

Turning to the present case, we first note that the record does not reflect the court's reasoning in denying the plaintiff's request for leave to amend its revised complaint. See *Bayview Loan Servicing, LLC* v. *Park City Sports, LLC*, 180 Conn. App. 765, 781, 184 A.3d 1277 ("[i]t is well established that the appellant bears the burden of providing an appellate court with an adequate record for review" [internal quotation marks omitted]), cert. denied, 330 Conn. 901, 192 A.3d 426 (2018). Nevertheless, we have no difficulty in concluding that the court acted within its discretion in denying the plaintiff's request, as the plaintiff did not seek to amend the complaint until May 1, 2017—well after the trial had ended and almost four months after the court had rendered its judgment. See *Motzer* v. *Haberli*, supra, 300 Conn. 747 ("[b]ecause the plaintiff made the request [for leave to amend his complaint] after the start of the trial, we conclude that the trial court acted well within its discretion in denying the plaintiff's request"). We, therefore, reject this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Daniel Zak, Peter J. Alter, and Leonard Bourbeau were also named as defendants in this action, but they are not participating in this appeal. We, therefore, refer to Woodland Ridge, LLC, as the defendant.

[2] The plaintiff had also appealed from the trial court's rendition of summary judgment in favor of Zak on all counts of the plaintiff's operative, revised complaint directed against him, but this court dismissed that portion of the appeal as untimely.

[3] The plaintiff also claims that the court improperly failed to find that the defendant breached the escrow agreement by failing to complete the common driveway in accordance with the specifications called for in the agreement. Because we conclude that the court did not err in failing to find a meeting of the minds as to the specifics of the common driveway, we necessarily reject this claim. See *Tedesco* v. *Agolli*, 182 Conn. App. 291, 307, 189 A.3d 672 ("[i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met" [internal quotation marks omitted]), cert. denied, 330 Conn. 905, 192 A.3d 427 (2018).

[4] Watson testified at trial that the plaintiff was formed in order to purchase the subject property, but there is nothing in the purchase agreement to indicate that he was contracting in his capacity as a member of the plaintiff.

[5] Megson & Heagle had originally invoiced Zak for $1752, but Watson reached an agreement with Megson & Heagle, whereby he and Kevin Burton, the owner of lot 2, would each pay one third of the billed amount, and Megson & Heagle would write off the remaining third.

[6] The plaintiff also brought a claim against the defendant for violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court, *Elgo*, *J.*, rendered summary judgment in favor of the defendant on this claim. The plaintiff has not appealed from this judgment.

[7] More specifically, the plaintiff alleged that the defendant breached the escrow agreement by "seeking to cause [Alter] to release the funds from escrow while a dispute [was] pending, as set forth in [p]aragraph 12 [of count 2 of the revised complaint], *and regarding the [d]efendant's failure to complete the remaining construction and improvements*, and before the completion of the work . . . ." (Emphasis added.) When considered in isolation, this allegation is arguably ambiguous as to whether the emphasized language states a second specification of breach of contract. Indeed, in its memorandum of decision, the trial court construed this claim as alleging two breaches of the escrow agreement: (1) by improperly seeking the release of the escrow funds; and (2) by failing to complete the common driveway according to the parameters set forth in the agreement. A review of the relevant procedural history, however, makes clear that the allegation, as pleaded, contains only one specification of breach of contract.

Preliminarily, we note that "[t]he interpretation of pleadings presents a question of law over which our review is plenary." *Landry* v. *Spitz*, 102 Conn. App. 34, 41, 925 A.2d 334 (2007). In its original complaint, the plaintiff alleged: "In seeking to cause [Alter] to release the funds from escrow while a dispute is pending, and before the completion of the work [the defendant] breached the escrow agreement." It is clear from this language that the plaintiff's original claim asserted only one breach of the agreement. On May 28, 2013, the defendant requested that the plaintiff revise this allegation by specifying "the particular dispute that was allegedly pending." In response to this request, the plaintiff added the phrase, "and regarding the [d]efendant's failure to complete the remaining construction and improvements." It is, therefore, clear that this additional language serves only to further qualify the nature of the "dispute" referred to in the original complaint and was not meant to add an additional specification of breach of contract.

[8] The plaintiff also alleged in count two that the defendant breached the purchase and sale agreement by failing to pave the common driveway in accordance with the specifications called for in that agreement. The court rendered judgment in the defendant's favor on this claim, and the plaintiff does not challenge it on appeal.

[9] Although this claim was not pleaded in the revised complaint; see footnote 7 of this opinion; it was actually litigated at trial without objection from the defendant. It was, therefore, proper for the court to adjudicate this unpleaded claim. See *Landry* v. *Spitz*, supra, 102 Conn. App. 43–44 ("in the context of a postjudgment appeal, if a review of the record demonstrates that an unpleaded cause of action actually was litigated at trial without objection such that the opposing party cannot claim surprise or prejudice, the judgment will not be disturbed on the basis of a pleading irregularity").

[10] The two versions of the escrow agreement also differ in that the date of

execution on the first page of the plaintiff's version is incomplete. Moreover, whereas paragraph 11 of the plaintiff's version identifies the buyer as "Watson Real Estate, LLC," the defendant's version identifies the buyer as "Dr. H. Kirk Watson, Watson Real Estate, LLC."

[11] The plaintiff also argues, in a conclusory fashion, that the court improperly failed to give any consideration to the plaintiff's parol evidence. We conclude that the plaintiff has not adequately briefed this argument. The plaintiff has not cited any authority nor pointed to anything in the record to support this contention but, rather, relies solely on the bare assertion in its brief that the court "fail[ed] to consider parol evidence." "It is well established that [w]e are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.) *Pacific Ins. Co., Ltd.* v. *Champion Steel, LLC*, 323 Conn. 254, 272 n.8, 146 A.3d 975 (2016). Consequently, we decline to address this argument.

It is difficult, in any event, for an appellant successfully to challenge a fact finder's consideration and weighing of evidence. "[T]he trier [of fact] is bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. . . . [W]e are not justified in finding error upon pure assumptions as to what the court may have done. . . . We cannot assume that the court's conclusions were reached without due weight having been given to the evidence presented and the facts found. . . . Unless the contrary appears, this court will assume that the court acted properly. . . . [Thus, if] . . . [a] statement [by the court may] suggest that the court did not consider [certain] testimony, we . . . are entitled to presume that the trial court acted properly and considered all the evidence." (Citations omitted; internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 229–30, 145 A.3d 362 (2016), cert. denied, 324 Conn. 905, 153 A.3d 653 (2017).

[12] See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960), overruled in part by *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000).

[13] Moreover, under the particular circumstances in the present case, it would not have been reasonable for the court to draw an adverse inference from the defendant's failure to offer Zak as a witness because Zak was equally available to both parties. Our Supreme Court has held on multiple occasions that "[w]hen a witness is equally available to both parties no inference unfavorable to either may be drawn." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 771, 443 A.2d 1274 (1982) (trial court properly refused to instruct jury that it might draw adverse inference from state's failure to call victim's husband as witness where victim's husband was equally available to both parties and was, in fact, in courtroom); *State* v. *Rosa*, 170 Conn. 417, 431, 365 A.2d 1135 (same), cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976). Although the Supreme Court subsequently stated, in dictum, that "as long as the *Secondino* adverse inference instruction remains viable in Connecticut . . . the mere fact that a witness is equally available to both parties does not preclude a trial court from delivering a *Secondino* charge"; (citations omitted) *Hines* v. *Saint Vincent's Medical Center*, 232 Conn. 632, 637 n.8, 657 A.2d 578 (1995); this dictum is no longer persuasive in light of the court's subsequent abandonment of the *Secondino* rule in *State* v. *Malave*, supra, 250 Conn. 728. Additionally, Justice Berdon, the author of the majority opinion in *Hines*, explicitly disavowed this dictum the following year in his dissent in *State* v. *Taylor*, 239 Conn. 481, 509 n.4, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997) (*Berdon, J.*, dissenting), wherein he opined that, "[i]n cases in which a witness is equally available to both parties, there is no logical basis for allowing an inference to be drawn from one party's failure to call that witness when the other party could have just as easily called that same witness. This is especially so because we have abandoned the voucher rule—that is, the common law rule that one could not impeach the credibility of his own witness." See also *State* v. *Malave*, supra, 733 ("In view of [the abandonment of the voucher rule] . . . [i]f a witness is available, he is equally available to both sides. If a witness has information favorable to one side, why shouldn't that side call that witness and bring out that information instead of relying on a negative inference based on ignorance that such a witness might have some unspecified information that might be unfavorable to the other party?" [Citations omitted;

footnote omitted; internal quotation marks omitted.]).

In the present case, Zak was not only available for both parties to call as a witness, but he was in fact called as a witness and examined by the plaintiff. The plaintiff, however, did not seek to elicit any testimony from Zak regarding his conversations with Watson and Burton. In such circumstances, it would have been unreasonable for the court to draw an adverse inference against the defendant for failing to call Zak as a witness.

[14] Indeed, as the plaintiff declares in its reply brief on appeal, "the entire theory of the case . . . was that [the defendant] failed to apply a second coat of pavement over the entire length of the common driveway."

---